UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| PATRICIA PACKER, | No. ED CV 07-01695-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court

1  concludes that for the reasons set forth, the decision of the
2  Commissioner must be reversed.

**STATEMENT OF ISSUES**

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") misrepresented the evidence and consideration of Plaintiff's obsessive-compulsive disorder ("OCD");
2. Whether the ALJ considered the treating psychiatrist's opinion;
3. Whether the ALJ made proper credibility findings;
4. Whether the ALJ posed a complete hypothetical question.

**I**

**THE ALJ DID NOT HAVE SUFFICIENT EVIDENCE TO REJECT**

**THE TREATING PSYCHIATRIST'S OPINION CONCERNING PLAINTIFF'S OCD**

**A.   Factual Chronology.**

From October 2003 through at least March 2007, Plaintiff was a patient of Dr. Kari Enge, a staff psychiatrist for the Department of Mental Health in San Bernardino, California. (See AR 235, 230-252, 274-276, 277-278, 279-295, 301-302.)  On February 17, 2005, Dr. Enge submitted a letter to the Department of Social Services indicating that Plaintiff's diagnoses included the following: obsessive-compulsive disorder; major depressive disorder with psychosis; panic disorder; and generalized anxiety disorder. (AR 235.)  The record also includes a list of medications described by Dr. Enge, at least from

July 2006 through March 2007 (AR 291).[1]

At Plaintiff's hearing, which occurred on March 19, 2007 (AR 296-341), testimony was taken from a medical expert ("ME"), Dr. Robin Campbell, a clinical psychologist (AR 315).[2]

At the hearing, the ME questioned Plaintiff regarding the effects of psychotropic medications. (AR 316-318.) There was also substantial testimony by the ME concerning whether or not Plaintiff was compliant with her psychotropic medications.  The ME attempted to interpret Dr. Enge's treatment notes regarding compliance with medication.  She opined, concerning these notes, "I would say there is some concern in the clinician's [Dr. Enge's] mind, or they wouldn't be presented in that way." (AR 324.)

Dr. Campbell also opined that Dr. Enge was not treating Plaintiff for obsessive-compulsive disorder.  This conclusion was apparently based on Dr. Campbell's opinion as to medications that should be used to treat OCD. ("Q: Is there a medication that can be used to treat obsessive-compulsive disorder?  A: Yes, there is.  Q: What would that be?  A: Clonodine, I believe." (AR 329.)

Plaintiff's counsel asked the ME how Plaintiff could be non-compliant with a medication that was not prescribed for her.  The ME

---

[1] It is uncertain if the list is a comprehensive description of medications prescribed by Dr. Enge during the treatment period. Most of the treatment charts do not list medications, citing the confidentiality provisions of California Welfare and Institutions Code §5328.  Dr. Enge was not contacted to determine whether the list of medications was exhaustive.

[2] The record contains the curriculum vitae ("CV") of Dr. Campbell. (AR 32-34.)  Dr. Campbell received a Ph.D. in clinical psychology in 2000, along with a M.Ph. in biostatistics in the same year.  The CV also reflects: "M.S. Clinical Psychopharmacology, in progress, Alliant University." (AR 32.)

3

responded, in part, that,

> "My assumption -- and I don't know -- is that there was a reason why the psychiatrist believed that her compliance is not good. And perhaps she didn't articulate it well and didn't document it well. But I can't imagine that she would sort of, you know, penalize the Claimant for following medical instructions, and then saying, you know, you're not being compliant. I assume there's a reason there, even though I really can't read it."

(AR 334.)

In his decision, the ALJ gave great weight to Dr. Campbell's opinion, but completely discounted Dr. Enge's opinions, noting, "... for the same reasons as cited by the medical expert I do not give these documents [Dr. Enge's treatment records] any weight." (AR 20.) Similarly, the ALJ disregarded Dr. Enge's opinions concerning Plaintiff's OCD:

> "I am in agreement with the comments of the medical expert and find that there is no evidence that the claimant was treated for obsessive-compulsive disorder, and/or that Dr. Enge actually made this diagnosis."

(AR 21.)

**B.   Applicable Law and Analysis**.

It is abundantly clear to the Court that the ALJ substantially relied upon the testimony and opinions of the ME to interpret Dr. Enge's treatment notes, which include a substantial amount of information regarding administration of psychotropic drugs. The

4

principal issue for the Court, therefore, is whether the ME's opinion can provide substantial evidence in support of the ALJ's determination to reject Dr. Enge's opinion regarding Plaintiff's OCD.

Social Security regulations make it clear that a psychological consultant, if properly licensed, may provide opinions regarding mental impairment. (See 20 C.F.R. §404.1616(d), (e).)  Indeed, subsection (f) of that regulation states in pertinent part that, "Psychological consultants are limited to the evaluation of mental impairments, as explained in §404.1615(d)."

The more difficult question, however, is whether a licensed psychologist may opine concerning mental health issues insofar as treatment of those conditions involves the administration of psychotropic medications.  In California, the statutes which govern the practice of licensed psychologists are embodied in the Business and Professions Code ("B & P").  In B & P §2904, it is plainly stated that, "The practice of psychology shall not include prescribing drugs, performing surgery or administering electro-convulsive therapy."  B & P §2903 provides that a psychologist may administer psychological services,

> "... involving the application of psychological principles, methods and procedures of understanding, predicting, and influencing behavior, such as the principles pertaining to learning, perception, motivation, emotions, and interpersonal relationships; and the methods and procedures of interviewing, counseling, psychotherapy, behavior modification, and hypnosis; and of constructing, administering, and interpreting tests of mental abilities, aptitudes, interests, attitudes, personality

characteristics, emotions, and motivations."

Prescription of psychotropic medications, and interpretation of treatment involving psychotropic medications, would appear to be clearly excluded with the parameters of the California regulatory statutes.

B & P §2914.2 states that the Licensing Board "shall encourage licensed psychologists to take continuing education courses in psychopharmacology and biological basis of behavior as part of their continuing education."

B & P §2914.3(10) provides that the Licensing Board shall develop guidelines which are to include "appropriate collaboration or consultation with physicians or other prescribers to include the assessment of the need for additional treatment that may include medication or other medical evaluation and treatment..."

Apparent efforts have been made in California to amend these sections of the B & P which prohibit a psychologist from engaging in the administration of psychotropic drugs. For example, Senate Bill 993, introduced on February 23, 2007, would have amended B & P §2904 to delete the phrase "prescribing drugs."

The Attorney General of the State of California issued an Opinion on December 19, 2002 (85 Ops. Cal. Atty. Gen. 247) which addresses the following questions:

> "1. May the Legislature prohibit the prescribing of drugs by clinical psychologists who have received training with respect to the use of prescription drugs under guidelines adopted pursuant to the Legislature's directive, when at the same time the Legislature has granted

1     prescription authorization to certain other health care
2     professionals?
3         2.  May the Board of Psychology authorize by
4     regulation the prescribing of psychotropic medications by
5     clinical psychologists who have received training with
6     respect to the use of prescription drugs under guidelines
7     adopted pursuant to the Legislature's directive?"

9 The Opinion distinguishes the practice of clinical psychology in
10 California from that of other health care professionals who are
11 permitted to prescribe drugs within the scope of their practice, such
12 as dentists, podiatrists, and certified optometrists.  The Attorney
13 General's Opinion concludes, however, that there is a distinction
14 between the practice of clinical psychology and these other health
15 care professions:

16     "The clinical psychologists in question are not
17     similarly situated with respect to the other health care
18     professionals who have been granted prescribing authority.
19     First, the training that a clinical psychologist may receive
20     concerning the use of prescription drugs 'is intended ... to
21     improve the ability of clinical psychologists to collaborate
22     with physicians' and 'is not intended to provide for
23     training psychologists to prescribe medication.' ([B & P]
24     §2914.3, subd. (c).)  In contrast, the training in
25     prescribing drugs received by the other health care
26     professionals is directed at and focused upon the
27     prescribing of medications within their respective scope of
28     practice.  This difference in the purposes of the training

affects the training itself. It must be conceded that clinical psychologists do not receive the identical training in prescribing drugs that, for example, dentists receive."

The Attorney General's Opinion continues by noting that,
"Accordingly, clinical psychologists are not similarly situated with respect to other health care professionals who are permitted to prescribe drugs. Their scope of practice is different causing differences to exist in both their training and the types and uses of the drugs involved."

Based upon applicable law, the only reasonable conclusion which the Court can reach is that in the Social Security context, in California, a clinical psychologist is not qualified to opine regarding mental health issues insofar as such an opinion is related to or based on the administration of psychotropic drugs. Logically, if a psychologist may not legally prescribe drugs, that reflects an underlying presumption that a psychologist is not qualified or properly trained to do so. In the record in this case, there is no testimony by a psychiatrist or other qualified mental health professional which provided competent evidence on which the ALJ could have rejected the opinion of the treating psychiatrist regarding Plaintiff's OCD. While some reference is made by the ALJ to an April 14, 2005 consultative examination by psychiatrist Linda M. Smith (see AR at 182-188), Dr. Smith's own report indicates that she reviewed "some outpatient psychiatric records from October of 2004 through January of 2005." (AR at 182.) Obviously excluded, therefore, from Dr. Smith's review was the February 17, 2005 diagnostic letter of Dr.

Enge indicating that she diagnosed Plaintiff with, among other things, obsessive-compulsive disorder. Moreover, there are substantial treatment records post-dating Dr. Smith's one-time examination which, obviously, could not have been addressed by Dr. Smith.

In any event, it is somewhat puzzling to the Court that the ALJ questioned whether Dr. Enge had even diagnosed Plaintiff with OCD. Nothing could be clearer than the diagnosis of OCD contained in Dr. Enge's letter of February 17, 2005. Moreover, there are significant references to the administration of psychotropic drugs, and other treatment, in the medical records which would appear to support, or certainly be consistent with this diagnosis. In the absence of a competent expert to interpret Dr. Enge's records, there is simply no substantial evidence in the record to support the ALJ's conclusions.[3]

Since this matter must be remanded, the Court will not devote substantial time to discussing Plaintiff's remaining issues. The Court will note, however, that with regard to the ALJ's assessment of Plaintiff's credibility, the decision fails to provide the requisite clear and convincing reasons to reject Plaintiff's reported symptoms. Ultimately, the ALJ's determination that, "[a]fter considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these

---

[3] The Court is also concerned about the extensive level of speculation which occurred during the hearing over such issues as what Dr. Enge's treatment notes meant regarding whether Plaintiff was compliant with her psychotropic medications. This could have easily been cleared up by development of the record; e.g., by contacting Dr. Enge to obtain clarification, if necessary.

symptoms are not entirely credible" is an insufficient recitation of reasons. While the ALJ correctly cited the regulations governing credibility assessment (see AR at 16-17), the only specific reference to the record which would support appellate review is a discussion of the activity questionnaire provided by Plaintiff's sister. (See AR at 18, 116-124.) The ALJ's conclusion in the decision that, "The responses to this questionnaire are exaggerated and inconsistent with the claimant's actual admitted activities" (AR 18), does not form a basis to depreciate Plaintiff's own credibility. The statements in the questionnaire are not those of Plaintiff, but of her sister. The ALJ could not, therefore, rely upon inconsistencies between the evaluation by Plaintiff's sister and Plaintiff's own statements as a basis for depreciating Plaintiff's credibility.

Finally, the Court need not substantially address Plaintiff's fourth issue, which is whether the ALJ posed a complete hypothetical question to the vocational expert ("VE"). Plaintiff indicates that the limitations determined by Dr. Enge were not included in the hypothetical question posed. (See AR at 339-340.) Since the Court's remand order will require a reevaluation of Plaintiff's mental health status, and of Dr. Enge's opinion, it is not necessary to presently evaluate that issue.

Based on the foregoing, the Court **ORDERS** this matter remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: October 6, 2008            /s/
                                  VICTOR B. KENTON
                                  UNITED STATES MAGISTRATE JUDGE

10